UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
800-FLOWERS, INC.,

                    Plaintiff,

      -against-

FLORALBX, LLC,

                    Defendants.
-----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
CV 18-2974 (JS) (ARL)

**LINDSAY, Magistrate Judge:**

      Before the Court, on referral from District Judge Seybert, is the motion of the plaintiff, 800-Flowers, Inc. ("800-Flowers"), seeking to dismiss the first and second counterclaims asserted by the defendant, Floralbx, LLC ("Floralbx"), pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons set forth below, the undersigned respectfully recommends that 800-Flowers' motion to dismiss be granted, in part, and denied, in part.

## BACKGROUND

      The following facts are drawn from the complaint and the defendant's counterclaims and are accepted as true for purposes of the instant motion. *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). These facts, however, do not constitute findings of fact by the Court. *See Colvin v. State University College at Farmingdale*, No. 13-CV-3595 (SJF)(ARL), 2014 U.S. Dist. LEXIS 85678, 2014 WL 2864224, at *1, n.1 (E.D.N.Y. June 19, 2014).

      800-Flowers is a New York corporation that provides a nationwide floral product and gift delivery service ensuring delivery of flowers, a variety of gourmet food items, balloons, stuffed animals, floral arrangements, and other gifts to customers throughout the United States. Compl.

---

[1] 800-Flowers is not moving to dismiss Floralbx's third counterclaim and intends to answer that counterclaim once this motion is decided. Pl.'s Mem. at 1.

¶¶ 1, 6. Many of these floral arrangements are shipped directly to customers in specially designed floral packaging boxes employed to protect and preserve the floral product. *Id.* ¶ 6. Floralbx is a Texas limited liability company with a principle place of business in Dallas. *Id.* ¶ 2. In November 2016, Nico de Swert ("de Swert"), the principal and owner of Floralbx, filed a patent application claiming a "Floral Packaging Method and Apparatus" with the U.S. Patent and Trademark Office ("U.S. PTO"), Patent No. 15/356,358 (the "Invention").[2] *Id.* ¶ 7. In simplest terms, the Invention is a box for shipping flowers. Pl.'s Mem at 3. It has a three-piece assembly made up of a lower box with a separate vase, an upper box enclosing flowers and a plastic sleeve and handle to keep the flowers upright during shipping and to allow the flowers to be lifted out of the upper box. Def.'s Mem. at 7; Tripp Aff. Ex. B. In conjunction with the Invention, Floralbx has developed a secret binding technique for flower stems (the "Assembly Technique") that ensures that flowers will remain in place during shipping. Am. Ans. & Countercls. ¶ 56.

In December 2016, de Swert and 800-Flowers entered into an agreement that required 800-Flowers to hold in confidence all oral and written information provided by de Swert concerning his invention (the "Confidentiality Agreement"). *See id.* Ex. A. The Confidentiality Agreement also obligates 800-Flowers, if requested, to return or destroy confidential information and to "verify in writing" that such destruction has occurred and no copies exist. *Id.* However, the Confidentiality Agreement limits 800-Flowers obligations by expressly removing material in the public domain from the above restrictions:

> These restrictions on the use or disclosure of Confidential Information shall not apply to any Confidential Information . . . which is or becomes generally available to the public other than by disclosure by Recipient . . ..

*Id.*

---

[2] De Swert subsequently assigned his rights in the invention to Floralbx. Am. Ans. & Countercls. ¶ 4.

2

On April 5, 2018, the parties entered into a License Agreement relating to Invention pursuant to which Floralbx agreed (1) to provide advice and services to 800-Flowers related to the use or sale of the Invention; (2) to grant 800-Flowers an exclusive license to manufacture, sell, offer to sell, import, export, advertise or otherwise exploit and dispose of products and/or practice processes that would be covered by one or more of the claims associated with the Invention; (3) to grant 800-Flowers the exclusive license in a wide territory defined as the United States, Canada and Mexico; (4) to grant 800-Flowers the right to sublicense its rights under the License Agreement to third party manufacturers and/or brokers; and (5) to grant 800-Flowers the right of first refusal to purchase the patent for the Invention. Compl. Ex. A. The term of the License Agreement was for an initial period of five years with subsequent auto-renewals of additional five-year terms, not to exceed a twenty-year period in total. *Id.*

On March 2, 2018, Floralbx executed and returned the License Agreement to 800-Flowers. Am. Ans. & Countercls. ¶ 65. Floralbx asserts that 800-Flowers held on to the partially executed License Agreement for over a month and then altered a "key date" in the License Agreement before signing it. *Id.* ¶ 66. Floralbx contends that this unilateral alteration of the launch date amounted to a counteroffer rather than an acceptance. *Id.* Accordingly, on April 9, 2018, Floralbx notified 800-Flowers that the parties did not have an agreement because 800-Flowers had rejected Floralbx's offer and made a counter-offer, which Floralbx then rejected. *Id.* ¶ 67.

On April 16, 2018, 800-Flowers sought to rely on the License Agreement and to pay Floralbx under its terms. *Id.* ¶ 68. Floralbx returned the payment check insisting that it had rejected 800-Flower's counteroffer with respect to the License Agreement. *Id.* Then, six weeks later, while the parties were attempting to negotiate a resolution of their dispute, 800-Flowers

3

commenced the instant action to enforce the License Agreement. ECF No. 1. The complaint includes a demand for a world-wide injunction prohibiting Floralbx from using the Invention. *Id.*

Two days later, on May 24, 2018, the U.S. PTO published de Swert's patent application.[3] *See* Yuan Decl. Ex. A. 800-Flowers contends that the publication placed the Invention into the public domain. Pl.'s Mem. at 4. Nonetheless, in June 2018, three weeks after the invention was published, Floralbx attempted to invoke the parties' Confidentiality Agreement and re-assert the Invention's status as "confidential." Am. Ans. & Countercls. ¶ 70. Specifically, by letter dated June 13, 2018, Floralbx demanded that 800-Flowers return any confidential information pursuant to the terms of the Confidentiality Agreement and provide it with assurances that 800-Flowers was in compliance with the terms of the Confidentiality Agreement. *Id.* 800-Flowers contends that Floralbx also demanded that it cease using the Invention, notwithstanding the fact that the Invention had been placed into the public domain and that it provide Floralbx with extensive information to enable Floralbx determine whether a breach of confidentiality had occurred. *See* Yuan Decl. Ex. C. The information sought by Floralbx included (1) all purposes for which the Invention had been used, (2) all persons to whom it had been disclosed, and (3) all steps taken to ensure confidentiality. *Id.* Floralbx was also seeking a representation from 800-Flowers that 800-Flowers was not engaging in reverse engineering. Am. Ans. & Countercls. ¶ 71.

In response, 800-Flowers noted that its only obligation under the Confidentiality Agreement was to send written verification of destruction, and, more importantly, that even that obligation no longer applied because the Invention had already been published and thus was no

---

[3] As of January 2019, the U.S. PTO had not issued a patent for the Invention. Pl.'s Mem. at 2.

longer "confidential" in any legal or other sense. See Yuan Decl. Ex. D. Nonetheless, "in an abundance of caution," 800-Flowers noted:

> 800-Flowers, Inc. verifies that, as documented in emails dated June 26, 2017 between Nico De Swert and Alfred Palomares, 800-Flowers, Inc. has already returned to Mr. De Swert the physical prototype materials that he provided. The only other "Confidential Information" that Mr. De Swert provided is Patent Application 15/356,358, which was published by the U.S. PTO on May 24, 2018, and is therefore now part of the public domain. My client is presently confirming that it does not possess any other materials-e.g., analyses, compilations, studies, or notes-which contain or reflect such information. Please inform me if there are additional materials or information that you believe to be encompassed by the term "Confidential Information."

*Id.*

According to 800-Flowers, rather than respond to its inquiry, Floralbx filed its initial counterclaims, asserting, among other things, that the Invention was not the only "confidential information" at issue. See ECF No. 5, Ans. & Countercls. ¶¶ 56–59. Specifically, Floralbx alleged that 800-Flowers had also disclosed certain "trade secrets" which were distinct from the Invention. *Id.* Floralbx pleaded counterclaims of misappropriation, unfair competition, wo counts of injunctive relief, breach of contract and breach of the implied covenant of good faith and fair dealing. *Id.*

On October 26, 2018, 800-Flowers moved to dismiss the counterclaims as legally deficient. ECF No. 18. In response, Floralbx filed an amended answer in order to voluntarily withdraw its trade-secret allegations as well as many of its initial counterclaims, leaving only its counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing. See ECF No. 24. In support of the remaining counterclaims, Floralbx alleged that in March 2018, before Floralbx's invention was published by the U.S. PTO, 800-Flowers publicly disclosed the invention to numerous third parties attending an 800-Flowers leadership conference. *Id.* ¶ 61. Floralbx further alleged that this improper disclosure gave competitors a

5

head start at making "knock-offs" which threatened Floralbx's competitive position in the marketplace. *Id.* ¶ 62.

Then, in December, Floralbx, once again, voluntarily withdrew its counterclaims and, with the plaintiff's consent, filed a second amended answer and counterclaims, the answer which is now the operative pleading. ECF No. 30. In its second amended answer and Counterclaims, Floralbx continues to allege that 800-Flowers engaged in unauthorized use and disclosure of the Invention before it became public information. Am. Ans. & Countercls. ¶ 55. Specifically, Floralbx asserts that sometime after it provided a copy of the Invention and the patent application to 800-Flowers, 800-Flowers "photographed, measured, and documented" the Invention in order to "value engineer" the Invention. *Id.*

According to Floralbx, these activities may have involved packaging engineers from outside the company. *Id.* However, Floralbx's primary focus is now on "intra-company disclosures." *Id.* ¶¶ 60-1. Specifically, Floralbx alleges that at the March leadership conference 800-Flowers disclosed to certain of its executives outside the "need to know" control group that the company was entering into an agreement to license the patent for the Invention. *Id.* ¶ 61. Floralbx also claims that 800-Flowers breached the Confidentiality Agreement by failing to return "confidential information" and to respond to the questions Floralbx posed in its June 13 letter. *Id.* ¶¶ 70-1. In response, 800-Flowers contends that Floralbx has never responded to its inquiry concerning what information still remains confidential now that the Invention has been published by the U.S. PTO. Pl.'s Mem. at 6-7. Accordingly, 800-Flowers now seeks to dismiss Floralbx's first counterclaim for breach of the Confidentiality Agreement and second counterclaims for breach of the covenant of good faith and fair dealing.

6

## DISCUSSION

### A. Standard of Review

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

For the purposes of a Rule 12(b) motion, "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated by reference, and to matters of which judicial notice may be taken." *Serdarevic v. Centex Homes, LLC,* 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quotation omitted); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). In addition, "in some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Id.* (citation and

7

internal quotation marks omitted). "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough." *Id.* (quoting *Global Network*, 458 F.3d at 156). "'In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason -- usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim -- was not attached to the complaint." *Id. (quoting Global Network*, 458 F.3d at 157)). In addition, "'[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *Global Network*, 458 F.3d at 157 (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

### B. Breach of Contract

As stated above, Floralbx has asserted a breach of contract claim against 800-Flowers arising out of Confidentiality Agreement. Floralbx contends, in this regard, that 800-Flowers has breached the Confidentiality Agreement (1) by failing to return all non-public information to Floralbx; (2) by failing to maintain the non-public information in confidence and disclosing non-public information to parties who did not have a "need to know" and had not agreed to the terms of the Confidentiality Agreement; (3) by misusing the non-public information to reverse engineer the Invention; and (4) by misusing the Confidentiality Agreement to engage in intentional delays of the development of a product based on the Invention. Def.'s Mem at 6. To survive the motion to dismiss, the complaint must allege facts which show: (1) the existence of an agreement, (2) the adequate performance of the contract by Floralbx, (3) breach of the contract by 800-Flowers and (4) damages. *See Frontline Processing Corp. v. Merrick Bank Corp.*, No.

8

13 CIV. 3956, 2014 WL 837050, at *2 (S.D.N.Y. Mar. 3, 2014) (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)). Conclusory allegations that 800-Flowers breached the agreement are insufficient to support the breach of contract claim. *Id.* (citing *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008)).

In support of its motion, 800-Flowers argues that since its only obligations was to maintain Floralbx' information in confidence until it became public and to return and to destroy any confidential information to the extent such information was not already public, 800-Flowers did not breach the Confidentiality Agreement. In other words, 800-Flowers maintains that it had no legal obligation to comply with Floralbx's requests or to provide the information set forth in Floralbx's June 13 letter since the Invention was already made public. 800-Flowers further argues that once the information ceased to be confidential, it had no legal obligation to return Floralbx's confidential information, to take any particular measures to protect the confidential information or to disclose the measures that it did take upon demand. Finally, 800-Flowers argue that Floralbx could not have suffered damages because it is only asserting that an intra-company disclosure occurred.

Despite these contentions, 800-Flowers does acknowledge that Floralbx has also alleged that certain actions occurred before the Invention was made public. Indeed, in its counterclaims, Floralbx asserts that de Swert had provided 800-Flowers with a prototype of the Invention and had disclosed the Assembly Technique. Am. Ans. & Countercls. ¶¶ 54, 56-8. Floralbx also alleges that before the Invention was made public, "the prototype and sample arrangement were photographed, measured, and documented for company executives and staff." *Id.* ¶ 55. Indeed, Floralbx states "a packaging engineer – either from 800-Flowers or from an outside company -- recorded various details of the components of the [I]nvention" and that "800-Flowers disclosed

9

the [I]nvention to outside vendors and manufacturers in the course of evaluating issues such as pricing, production time, and mold costs." *Id.* Finally, Floralbx contends that 800-Flowers did so in order to value engineer the Invention with outside packaging engineers and manufacturers. *Id.*

Nonetheless, 800-Flowers contends that even if the Court were to accept Floralbx's claim that 800-Flowers "photographed, measured, and documented" the Invention order to engage in "value engineering," those actions would not amount to a breach of the Confidentiality Agreement. In support of this argument, 800-Flowers points to section 1 and 2 of the Confidentiality Agreement, which provide:

> 1.   The party receiving the Confidential Information . . . shall hold such Confidential Information in confidence, and . . . shall not disclose such Confidential Information to any third party, except as otherwise provided for in Section 2 hereof, without the prior written approval of the party disclosing the Confidential Information . . ..
>
> 2.   Recipient shall maintain appropriate control over the Confidential Information and shall limit its distribution only to persons who have a "need to know" all or part of the Confidential Information in order to evaluate entering into of a possible business arrangement.

Yuan Decl. Ex. B. 800-Flowers asserts, therefore, that the actions about which Floralbx complains are exactly what 800-Flowers would need to do to "evaluate a possible business arrangement" even if the evaluation involved third parties such as the packaging engineers.

Although the language of the Confidentiality Agreement makes clear that the parties contemplated that 800-Flowers would be sharing "correspondence, memos, analyses and other disclosures" with third-party analysts and manufacturers as part of its due diligence, it is not clear if the Confidentiality Agreement contemplated that 800-Flowers would be "reverse" or "value" engineering" the Invention in order to make a

10

copy of it once the Invention was placed in the public domain. Moreover, without more facts, the Court is unable to determine if the information was shared outside the "need to know" control group.

The Court also finds 800-Flowers argument with respect to damages without merit. Although 800-Flowers correctly notes that there is no allegation that 800-Flowers has itself developed a competing product, the Court disagrees that Floralbx should be barred from asserting a breach of contract claim based on what may be a technical breach. *See Saeco Vending, S.P.A. v. Seaga Mfg., Inc.*, No. 15-CV-3280 (AJN), 2016 WL 1659132, at *7 (S.D.N.Y. Jan. 28, 2016) ("New York law provides that nominal damages are always available in a breach of contract suit."). Accordingly, the undersigned finds that Floralbx's allegations are sufficient to state a plausible breach of contract claim and respectfully recommends that the motion to dismiss the first counterclaim be denied.

  C. **Breach of the Implied Covenant of Good Faith and Fair Dealing**

In contrast, the undersigned does find that Floralbx's claim for breach of the implied covenant of good faith and fair dealing should be dismissed as duplicative of its breach of contract claim. "New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013). "Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Id.*

11

In its opposition papers, Floralbx argues that its claim for breach of the implied covenant of good faith and fair dealing is based on different facts than its breach of contract claim. Def.'s Mem. at 3. Specifically, Floralbx contends that the clam for breach of the covenant of good faith and fair dealing is based on the fact that 800-Flowers attempted to reverse engineer the Invention through the use of the non-public information. Therefore, even if 800-Flowers' conduct is not found to have expressly violated the terms of the Confidentiality Agreement, Floralbx argue that it was implied that its non-public information would be protected. Although Floralbx has stated the facts supporting its claim for the breach of the implied covenant of good faith and fair dealing is a slightly different manner, at its core, Floralbx's breach of contract counterclaim is also premised on 800-Flower's alleged disclosure of confidential information to people who could reverse engineer the Invention so that 800-Flowers could develop its own copy of the Invention. Am. Ans. & Countercls. ¶¶ 75-7. The fact that, to this end, Floralbx's breach of contract claim may not be successful does not alter the fact that the two claims are premised on the same factual allegations. Accordingly, it is respectfully recommended that Floralbx's claim for breach of the implied covenant of good faith and fair dealing be dismissed.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson,*

*Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated: Central Islip, New York
August 12, 2019

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge